29546. GOETTEE *v.* CARLYLE *et al.*

DECIDED NOVEMBER 12, 1942.

*McLaws, Brennan & Zeigler,* for plaintiff.

*Ernest J. Haar,* for defendants.

MacIntyre, J. (After stating the foregoing facts.) 1. The injury was alleged to be due to a structure erected by a lessee on the land owned by the Carlyles. "Carlyle," as hereinafter used, will refer to R. T. Carlyle, the husband, and Mrs. Carlyle will be designated as such.

A person who erects a building to be used as a place of amusement, if he be the proprietor or manager of such an amusement place of business, whether he be the owner of the land upon which it is located, or the owner of both the land and the building, or only the lessee in possession of the place of amusement, and who expressly or impliedly invites the public there, owes a duty to the public to use reasonable care in the construction of the building for the purpose for which it was constructed, to wit: the entertainment which was to be carried on in said structure, and to keep the building in repair, that is, to repair defects of which he knows or in the exercise of ordinary diligence ought to know. And hence, when this case was formerly before this court, *Carlyle* v. *Goettee,* 64 *Ga. App.* 360 (13 S. E. 2d, 206), the petition which, in effect, contained such allegations, was held good against the demurrers attacking it. *Atlanta Cotton-Seed Oil Mills* v. *Coffey,* 80 *Ga.* 145 (4 S. E. 759, 12 Am. St. R. 244). But if on the trial the proof shows that the owner of the land merely leases it to an-

other and fully parts with the possession and the right of possession, thus becoming a mere landlord, and the lessee constructs a building, and the landlord has no notice of the building being defectively constructed or being in disrepair, he is not liable for defects in the structure. The probata would not agree with the allegata, and notwithstanding the allegations in the petition there could be no recovery. *Childers* v. *Speer,* 63 *Ga. App.* 848, 852 (12 S. E. 2d, 439).

It would be rather a harsh rule to hold that, if A leases a piece of land to B and B takes possession and erects a structure thereon of which he has exclusive possession and control, and by reason of unsafe construction or because of A's failure to repair defects of which he had no notice, C is injured, that A may be held liable. We do not think there is such a rule in Georgia, and there would have to be in order for the plaintiff to recover under our construction of the evidence in this case. Rayfield *v.* Sans Souci Park, 147 Ill. App. 493 (22 A. L. R. 626); *Augusta-Aiken Railway & Electric Cor.* v. *Hafer,* 21 *Ga. App.* 246 (94 S. E. 252). We might here call attention to the fact that in the case last cited the original record shows that the railroad company's name did not appear upon the advertisement advertising the amusements at the park, and there was nothing in the testimony which showed that the public was led to believe that the railroad company, in the advertisement, sponsored the operation of the amusements. If the owner of the land was the owner, proprietor, or manager, operating the place of amusement thereon, he certainly could not be said to have fully parted with his possession. And while it is true that the plaintiff testified: "Mr. Carlyle owns the whole amusements out there, the defendant sitting there. I have seen him out there," in the light of the copy of the written lease that was subsequently introduced in evidence, the testimony of Carlyle that he fully parted with the possession of the property upon which the scooter track was built when he leased it to Elsner and Netzlee, that he had nothing to do with the building of the scooter track, and no notice that it was in disrepair up to the time of the occurrence in question, and that subsequently to the occurrence the lessee left the premises and the lessor repossessed the property (the testimony does not show at what time the plaintiff referred to, whether before or after the injury, when he testified that Carlyle operated the

amusement park), and the testimony of Auld to the effect that he and his father built the scooter track for the lessee and not the lessor, and was paid by the lessee, we think the evidence shows that the plaintiff had no personal knowledge of the fact that Carlyle was the operator of the amusement park at the time of the injury, and that no inference that Carlyle had invited the public to ride the scooters, or that Carlyle as the owner or operator of the scooter track at the time of the injury, was authorized by the evidence. If it is said that the plaintiff intended to testify that Carlyle was the owner, not only of the land, but also of the amusement park thereon at the time of the injury, such a conclusion of the plaintiff was not warranted by the facts upon which he based it. *Evans & Pennington* v. *Scofield's Sons Co.,* 120 *Ga.* 961, 962 (48 S. E. 358). As to the statement of the plaintiff that one Sunday morning while the plaintiff was out at the Gold Star place, at the part known as the "Hay Loft," Carlyle asked him and others to ride the scooters, we think, in the light of the lease and the testimony of Carlyle, that he had fully parted with possession, that this was not an invitation in the legal sense, especially so in view of the testimony of Auld that the lessee had built and paid for the structure. It was merely advice or suggestion. There was no holding out that Carlyle was operating or controlling the motor scooter track at this time, or at any time before the injury. *Frear* v. *Manchester &c. Co.,* 83 N. H. 64 (139 Atl. 86, 61 A. L. R. 1280).

When the owner leases his land and fully parts with possession and the tenant erects a structure thereon, the owner is transformed into what the law denominates a landlord, a particular kind of owner whose rights as they relate to such leased premises are restricted, and whose liabilities are correspondingly limited. Thus, the liabilities of the owner who has been transformed into such a landlord is no longer fixed by Code, § 105-401, which provides: "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe," but are limited and determined by Code, § 61-112, which is as follows: "The landlord, having fully parted with possession and right of possession, is not responsible to third persons for damages resulting from the negligence or il-

legal use of the premises by the tenant; but he is responsible to others for damages arising from defective construction or for damages from failure to keep the premises in repair." The testimony shows that before the injury an amusement park was operated on certain land which Carlyle had leased to Gold Star Ranch Park Inc., and that the park was owned and operated by Gold Star Ranch Park Inc., and it not appearing that the injury occurred before the time Carlyle repossessed the property there was no error in directing a verdict in favor of Carlyle. The principles above announced are not changed by the fact that Carlyle owned most of the stock in Gold Star Ranch Park Inc. As to Mrs. Carlyle, the testimony showed that she owned a part of the leased land and was a small stockholder in Gold Star Ranch Park Inc. There was no evidence to show that she operated, managed, or sponsored the amusement structure. There was no error in directing a verdict in her favor.

The first advertisement which listed the scooter ride among the amusements of the park was published on April 1, 1939, whereas the injury occurred on March 19, 1939; and there is nothing in the record to show that at the time of the injury the amusement corporation had ever sponsored, owned, operated, or controlled the scooter track in question, which had been erected on land adjoining its park and held under a separate lease and by a separate party; nor had it held itself out as so doing by advertisement or otherwise before April 1, 1939. Hence we think the court did not err in directing a verdict in favor of Gold Star Ranch Park Inc.

2. Relatively to the copy of the lease introduced as secondary evidence over the objection of the plaintiff Carlyle testified: "I did have at one time a contract of lease with one Gus Elsner and Philip Netzlee. This is a copy of the original lease. That lease was never recorded in the court house. The original of that lease was in the possession of my stenographer and secretary. I never had possession of it myself, other than when we signed it. We turned it over to them, one copy, and kept the other copy. I have control over the records now in my office. I have made diligent search to try to find the original lease. I have looked through everything I had, but the stenographer did all of the searching of the files, because I did not have anything to do with the putting of it away, and naturally would not know how to find anything in

the files. I have searched all of my personal files, and was not able to find the original. I asked others to search for the lease, and everybody in the office searched for it. What happened when we got the contract out to make this copy for you, we don't know, and then we never saw it since." Miss Georgia May Wiggins testified for the defendant: "I work for Mr. Carlyle, I was working for him in December 1938, and January and February of 1939. In fact, I have been working for him since October 1934. I am able to take stenographic notes. On January 4th, 1939, I took some stenographic notes which, when transcribed, produced this instrument. I have the original stenographic book with me. When this case came up I made a diligent search to try to find the original of this paper in Mr. Carlyle's records. I searched everywhere possible. I transcribed this paper from the original dictated notes. I took the original dictation, and I wrote this, and this is the instrument. My notes are correct, as far as I can read. The parties to this contract signed it, and they signed it in my presence. I was the witness to it. This writing is the same language that was in the original lease; absolutely. There are no changes." Carlyle testified: "Since this case started I have tried to get hold of Mr. Netzlee and Mr. Elsner. I have seen two or three people who saw them, or say they have seen them, and I wrote them at this address, and the letter came back. I have not been able to locate them. I do not know whether or not they have now got in existence at this time a copy of this lease. I made a diligent effort to try to locate them. You told me to get their copy if I could get it, and I tried for about six months to get them located, and I have been unable to do so. I can't locate them."

It is insisted that no sufficient foundation was laid for the introduction of the secondary evidence, a copy of the lease. The question of diligence in such a case is addressed to the sound discretion of the judge. This discretion will not be interfered with unless manifestly abused. *Cowart* v. *Fender,* 137 *Ga.* 586 (4) (73 S. E. 822, Ann. Cas. 1913A, 932). Under the showing made there appears no abuse of discretion in admitting the secondary evidence. *Metropolitan Life Insurance Co.* v. *Vickery,* 49 *Ga. App.* 727, 729 (176 S. E. 815); Code, §§ 38-203, 38-212, 38-701, 38-702.

3. It is contended that the lease was defective and inadmissible because it did not express the time of its termination. This ex-

ception is not meritorious for, under the law of this State, it ran by operation of law until the last of the calendar year, no time being specified for the duration of the tenancy. *Willis* v. *Harrell,* 118 *Ga.* 906 (2) (45 S. E. 794).

4. Even if the lease were so defective as to the description of the property as to make it unenforceable between the parties as a written lease, it had some value as evidence, for the occurrence happened within two or three months after the property was rented, and if it happened during the term of the lease, within a year after the renting of the property, the verbal contract of rental, if for one year, was binding. *Ridgway* v. *Bryant, 8 Ga. App.* 564 (70 S. E. 28).

The judge did not err in directing a verdict in favor of all three defendants.

*Judgment affirmed.* *Broyles, C. J., and Gardner, J., concur.*