30410. INDIAN SPRINGS SWIMMING POOL CORP.
*v.* MADDOX.

843

DECIDED MARCH 11, 1944. REHEARING DENIED MARCH 24, 1944.

*W. B. Mitchell, Joel B. Mallet,* for plaintiff in error.

*Barrett & Hayes, Brandon, Matthews, Long & Nall,* contra.

SUTTON, P. J. Mrs. Irene Bankston Maddox sued Indian Springs Swimming Pool Corporation and E. D. Hoard for damages for the death of her minor son, Donald A. Maddox, who died from injuries received from diving from a springboard into the pool operated by the defendants which had been partially drained so that the water beneath the springboard was only three or three and a half feet deep at the time the plaintiff's son was injured. The petition alleged that the defendants were negligent in failing to advise the plaintiff's son that the water was only three or three and a half feet deep beneath the springboard; in failing to post warning signs around the pool and at the entrance of the pool to warn patrons that the pool was dangerous and the water therein shallow; in failing to have barriers around the springboard; and in failing to station a guard at the pool to warn patrons of the conditions at the pool. The defendants contended that they notified the plaintiff's son, at the time he rented a bathing suit from them, not to dive into the pool, and that his injuries were the result of his own negligence and failure to exercise ordinary care. The jury returned a verdict in favor of the plaintiff against Indian Springs Swimming Pool Corporation. That defendant's motion for a new trial was overruled, and the exception here is to that judgment.

■ The defendant contends that the court erred in overruling the general grounds of the motion for a new trial, as it contends that the evidence showed the deceased was not in the exercise of ordinary care for his own safety at the time he was injured; that the evidence does not show that the plaintiff was dependent on the deceased; or that the deceased was not survived by a widow

or child. The jury was authorized to find from the evidence that the deceased was a school boy fifteen years of age at the time of his death; that he died from injuries received from diving from a springboard into the pool which was operated by the defendant, and which had been recently drained; that the water underneath the springboard would have been six feet deep, if the pool had been full; but at the time the plaintiff's son was injured the water was only three to three and a half feet deep beneath the springboard; that the water in the pool was not clear, and the bottom of the pool was not visible through the water; that the deceased went directly from the dressing room to the springboard, and dived into the pool; although another person had been injured earlier in the day from diving from the springboard into the pool, no warning was placed at the springboard, and no barriers were erected across the springboard to prevent the plaintiff's son from using the springboard; that her son was a stranger, and was not familiar with the pool and the conditions there; that no life guard was maintained at the pool; that after the deceased was injured, his body sank to the bottom of the pool, and remained there until it was stumbled over by another patron of the pool who called for assistance and helped to remove him from the water. The evidence was conflicting on material issues. Some witnesses testified that the deceased waded in the water of the pool before going to the springboard, while other witnesses testified that the deceased went directly from the dressing room to the springboard and dived into the water. While there was evidence from witnesses for the defendant that the deceased was told at the time he rented a bathing suit from the defendant not to dive into the pool, and that he was wearing this suit at the time he was injured; other witnesses testified that he furnished his own bathing suit and did not rent a suit from the defendant, and that after his injury the suit that was removed from him was the one purchased by him in Atlanta in the presence of the plaintiff. This suit was introduced in evidence by the plaintiff. There were other conflicts in the testimony as to the conditions which existed at the pool at the time of the injury; and the jury resolved these conflicts in favor of the plaintiff. "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries oc-

casioned by his failure to exercise ordinary care in keeping the premises and approaches safe." Code, § 105-401. This statute places upon such owner or occupier of land the duty to exercise ordinary care for the safety of its invitees in discovering defects or dangers in the premises or instrumentalities thereon, and imposes a liability for injuries resulting from such defects as a reasonable inspection would disclose. Such owner or occupier of land is liable for a failure to warn its invitees of dangers or defects in such premises or instrumentalities of which it knew, or of which it was its duty to know in the exercise of ordinary care. *Fulton Ice & Coal Co.* v. *Pece,* 29 *Ga. App.* 507 (116 S. E. 57). Also see, *Savannah Theatres Co.* v. *Brown,* 36 *Ga. App.* 352 (136 S. E. 478); *Georgia Power Co.* v. *Sheats,* 58 *Ga. App.* 730 (199 S. E. 582); *Moone* v. *Smith,* 6 *Ga. App.* 649 (2) (65 S. E. 712). Questions of diligence and negligence, including contributory negligence, and what negligence constitutes the proximate cause of an injury, are usually questions of fact peculiarly for the jury. In the present case, the finding of the jury that the defendant was not in the exercise of ordinary care for the safety of the plaintiff's minor son, and that this failure was the proximate cause of his injury, is supported by evidence and has the approval of the trial court, and is therefore binding on this court.

(*a*) The contention that there is no evidence that the plaintiff was dependent upon the deceased, within the provisions of the statute, is without merit. The plaintiff testified in part: "I had a son by the name of Donald A. Maddox, who is now dead, having died June 15, 1936, at the age of fifteen. . . I didn't have any girl, and Donald would do a lot of things that girls would have done. He washed dishes, and made beds, and brought in kindling and coal, and shopped for groceries, and did just any kind of little errand like that that most any child would do. He had certain jobs to do that were expected of him, and he always did them. The services he rendered to me during his lifetime which I have just stated were worth at least $40 a month to me, because it saved me from having to hire somebody to do these things. I was dependent on him for those services and contributions about the house." The action was brought under the provisions of the Code, § 105-1307, which provides that a mother may recover for the homicide of a child upon whom she is dependent, or who con-

tributes to her support, unless such child leaves a wife, husband, or child. Before the mother can recover in such an action, the law requires that she be at least partially dependent on the child's labor, and the child must contribute to her maintenance; but services rendered by a child to his mother about the home meet the requirement where the mother is shown to be dependent upon such services. *Reid* v. *Moyd*, 186 *Ga.* 578, 579 (198 S. E. 703), and cit. In the present case, the testimony of the plaintiff, that she was the mother of the deceased, and that his services to her about the home were worth at least $40 a month to her, and that she was dependent upon him for such services, was not controverted, and was sufficient to authorize the jury to find that she was at least partially dependent upon the deceased at the time of his death, and that the deceased was contributing to her maintenance prior to and at the time of his death.

(*b*) The contention of the defendant that the verdict is contrary to law because it does not appear from the evidence that the deceased was not survived by a wife or child is without merit. It appears from the evidence that the deceased was a resident of Georgia, and at the time of his death was fifteen years of age. All statutes should have a reasonable construction and the law looks to substance rather than to form. The Code, § 53-102, provides in part: "To be able to contract marriage, a person must be . . if a male, at least 17 years of age." Under the plain provisions of this statute, at no time during the life of the deceased could he have entered into a valid marriage, or by his acts and declarations, have ratified and made perfect an inchoate marriage. *Morgan* v. *Morgan*, 148 *Ga.* 625, 626 (97 S. E. 675, 4 A. L. R. 925). Since the uncontroverted evidence authorized, if it did not demand a finding that the deceased had never contracted a valid marriage or ratified an inchoate marriage, and therefore left no wife, it follows that this same evidence was sufficient to create an inference or raise a presumption that the deceased was not the father of a legitimate child or children, and nothing to the contrary appearing from either the pleadings or the evidence, that the jury was authorized to find that the deceased died without leaving a wife or child. The cases cited by the plaintiff in error, *Clements* v. *Pollard*, 53 *Ga. App.* 544 (186 S. E. 587), *Bailey Produce Co.* v. *Harden*, 56 *Ga. App.* 171 (192 S. E. 237), *Butts* v. *City of Moul-*

*trie, 39 Ga. App.* 685 (148 S. E. 278), *and Lamb* v. *Tucker,* 146 *Ga.* 216 (91 S. E. 66), are distinguishable on their facts from the present case. In each of those cases it does not appear that the deceased child was not of sufficient age and capacity to have entered into a valid marriage, and the issue was raised on general demurrer or oral motion in the nature of a general demurrer, to the plaintiff's petition, where the allegations of the petition are construed most strongly against the pleader; while in the present case the issue is raised by exceptions to the judgment of a trial court overruling a motion for a new trial, where the evidence is construed most favorably in support of the verdict. In determining whether or not a petition sets out a cause of action, the allegations will be construed most strongly against the pleader; but in determining whether there is evidence to warrant a verdict, the evidence will be construed most favorably in support of the verdict. *Wood* v. *Pynetree Paper Co.,* 29 *Ga. App.* 81 (114 S. E. 83). See also, *Western & Atlantic Railroad* v. *Mathis,* 63 *Ga. App.* 172, 173 (10 S. E. 2d, 457), and cit.

The verdict is supported by evidence, and the judge did not err in overruling the general grounds of the motion for a new trial.

■ In special ground 1 of the motion for a new trial, the plaintiff in error contends that the court erred in failing to give in charge to the jury the following written request: "Unless it appears that the earnings or income of [the plaintiff] herself and husband were not sufficient to support her in a manner commensurate with her circumstances and standing in life, she would not be dependent upon her son, and you would find for the defendant." The judge in his charge instructed the jury that before the plaintiff could recover for her son's death, she must show by a preponderance of the evidence that she was dependent on her deceased son, wholly or in part, for support, and that he substantially or materially contributed to her support, and that both dependency and contribution must be proved before the jury would be authorized to find for the plaintiff. The charge in this respect was sufficient under the facts of this case. There was no evidence as to the income or earnings of the plaintiff or her husband, and the testimony of the plaintiff, that she was dependent upon the deceased for certain enumerated services which she estimated were reasonably worth $40 per month to her, was uncontroverted. The judge did not err in failing to give the requested charge.

848

■ It is contended in special ground 2 that the court erred in his remarks or statement to the jury when it was brought into the courtroom, after it had been out considering the case for several hours, and inquiry was made as to how the jury was divided with respect to numbers and the probability of its agreeing upon a verdict, in that he unduly pressed the jury to agree on or reach a verdict. The remarks of the court were quite lengthy, and we have considered them very carefully, and have examined the decisions of this court and the Supreme Court dealing with recharges or statements made by judge to jury after the jury had deliberated and failed to agree on a verdict. We are of the opinion that under the facts and circumstances of this case no harmful error is shown by the statement made to the jury, as complained of in special ground 2 of the motion.

■ Special grounds 3 and 4 are merely amplifications of the general grounds, and show no error.

■ The verdict is supported by evidence, no error of law appears, and the judge did not err in overruling the motion for a new trial. *Judgment affirmed. Felton and Parker, JJ., concur.*