33611.  DAVIS *v.* CITY OF ATLANTA *et al.*
33612.  SOUTHEASTERN FAIR ASSN. *v.* DAVIS *et al.*

DECIDED JULY 16, 1951. REHEARING DENIED JULY 30, 1951.

574

*Marvin G. Russell, Turner Paschal,* for Davis.

*J. C. Savage, J. C. Murphy, J. M. B. Bloodworth, John E. Feagin, Henry L. Bowden,* for City of Atlanta.

*A. C. Latimer, Edward L. Savell, T. J. Long,* for Harris.

*Fine & Efurd,* for Southeastern Fair Association.

TOWNSEND, J. (After stating the foregoing facts.) ■ Where a city, under charter authority, maintains a park primarily as a source of revenue, the duty of maintaining it in a safe condition is ministerial rather than governmental, and the municipality is liable for the breach of such duty. *Cornelisen* v. *City of Atlanta,* 146 *Ga.* 416 (91 S. E. 415). Whether or not the City of Atlanta, the owner-lessor here, and the Southeastern Fair Association, the lessee and sublessor, are jointly liable with the concessionaire for injuries sustained by a patron of the amusement park while riding on an amusement device owned and

operated by a concessionaire depends upon whether, as a matter of law, they owed any legal duty to patrons coming upon the premises for the purpose of patronizing the concession or whether they had, as they contend, been relieved by the terms of their leases, from such duty.

Code § 105-401 provides as follows: "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe." Code § 61-112 provides as follows: "The landlord, having fully parted with possession and right of possession, is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; but he is responsible to others for damages arising from defective construction or for damages from failure to keep the premises in repair." Where the owner has fully parted with both possession and right of possession, his duties are those prescribed by the latter quoted Code section, and the former is without application. *Dobbs* v. *Noble*, 55 *Ga. App.* 201 (189 S. E. 694). A landlord who neither retains some control, or right of control, or assumes control over the premises is ordinarily under no duty to inspect the premises and ascertain whether or not they are in a safe condition. *Barnes* v. *Thomas*, 72 *Ga. App.* 827 (35 S. E. 2d, 364); *Echols* v. *Patterson*, 60 *Ga. App.* 372 (4 S. E. 2d, 81). On the other hand, where such right of control is retained or assumed, he will be liable in damages to those whom he has expressly or impliedly invited upon the premises for failure to exercise ordinary care for their safety. See *Indian Springs Swimming Pool Corp.* v, *Maddox*, 70 *Ga. App.* 842 (29 S. E. 2d, 724); *Fulton Ice & Coal Co.* v. *Pece*, 29 *Ga. App.* 507 (116 S. E. 57); *Savannah Theatres Co.* v. *Brown*, 36 *Ga. App.* 352 (136 S. E. 478); *Georgia Power Co.* v. *Sheats*, 58 *Ga. App.* 730 (199 S. E. 582); *Moone* v. *Smith*, 6 *Ga. App.* 649 (2) (65 S. E. 712); *Lowe* v. *Atlanta Masonic Temple Co.*, 79 *Ga. App.* 575 (54 S. E. 2d, 677); *Coffer* v. *Bradshaw*, 46 *Ga. App.* 143 (167 S. E. 119).

The lease agreement set out between the City of Atlanta and Southeastern Fair Association, in connection with the allegations

of the petition, establishes that both parties thereto are corporations and were in existence prior to the execution of the lease agreement. Paragraph 16 of the lease provides that the conduct of all activities on the leased premises shall be subject to the absolute control of a board or committee of fifteen members, five of whom shall consist of the lessor's mayor and members of its general council. It is noted that these are the elected officials of the municipality through whom its business must be transacted, and that they became members of this governing committee having absolute control of the amusement park by virtue of their office, and not as individuals, since they are not even named in the lease. Therefore, the mayor and four members of the general council of the city have one-third of the voice in all matters such as the letting of concessions, inspection of grounds, and general management of the amusement park. It is further noted that the entire remuneration received by the city is a percentage of net profits resulting from this management. The mayor is given the right to audit the books at all times, and the association is accountable to the city at the expiration of the lease for all profits which have not been previously invested in permanent improvements and become the property of the city as such. Under these circumstances, it cannot be said that the municipal corporation parted absolutely with control of the premises, and particularly is this so where the premises in question are an amusement park operated primarily for the residents of the municipality and others in the vicinity. Not having parted absolutely with its control, or at least its right of control to the extent of a one-third voice in the management of the entire operation, its duties and liabilities must be those set out in Code § 105-401 relating to the owner or occupier of land. Among these is the duty to inspect to ascertain whether the premises are safe for the uses for which they are intended. *Monahan* v. *National Realty Co.*, 4 *Ga. App.* 680 (62 S. E. 127); *Babcock Brothers Lumber Co.* v. *Johnson*, 120 *Ga.* 1030, 1035 (48 S. E. 438).

It appears from the allegations of the petition that "defendants jointly operated said Lakewood Park and the 'Scrambler' for profit and mutual gain and did invite, solicit, encourage and advertise to the general public to come to Lakewood Park for

amusement, entertainment and recreation." The lease agreement specifies that the property shall be maintained as a recreation park and playground for the use of the public. The sponsoring, soliciting and advertising in connection with informing the public of this fact necessarily lodged in the committee in sole control of the operation, one third of whom were the executive officers of the city, acting in their capacity as such. Having committed itself thus far in a venture for profit, the city cannot contend that as a matter of law it has parted absolutely with control of the premises and the venture being carried on therein, nor does the agreement of the association to indemnify the city for injuries to any person in any way change the legal rights of third persons who have in fact sustained injuries as a result of negligence in the operation of the amusement devices.

Council for the City of Atlanta rely especially upon *Augusta-Aiken Railway & Electric Corp.* v. *Hafer,* 21 *Ga. App.* 246 (94 S. E. 252), and *Goettee* v. *Carlyle,* 68 *Ga. App.* 288 (22 S. E. 2d, 854). The first of these cases is discussed in the *Goettee* case, which points out that nothing in the testimony in that case indicated that the owner of the amusement park, a railroad company, sponsored the operation of the leased premises, although it did advertise it for the purpose of increasing its passenger traffic. The same was true of the circumstances in the *Goettee* case, in which Carlyle, the owner, leased the premises for a stated sum and relinquished all control over the property, the lessee thereafter erecting and conducting amusement devices with which the owner had no connection whatever. In the former case there was held to be no assumption of control (or sponsorship) and in the second no right of control. The cases are thus distinguishable on their facts.

The petition sets out a cause of action against the City of Atlanta as a joint tort-feasor, in that it failed to exercise ordinary care in inspecting the amusement device in question to ascertain whether it was safe before inviting the public to make use thereof. The trial court erred in sustaining the general demurrer of this defendant and dismissing the petition as to it.

■ Much of what has been said in the preceding subdivision of this opinion applies with equal force to the Southeastern Fair

Association which, under the allegations of the petition, sponsored the maintenance of the park as a whole and invited the public upon the premises, but failed in its duty to exercise ordinary care to inspect the amusement device and ascertain whether it was safe. The lease agreement with the concessionaire, it is true, specifies that the latter shall have absolute control over the operation of the concession, but the lease also provides that the concessionaire shall keep the device in repair and that failure to abide by the regulations of the association shall be ground for cancellation of the lease agreement. It shows on its face that the concessionaire does not have absolute control over his concession, for the entire scheme of the lease ties the operation of this concession in with the management of the amusement park generally. It designates the color scheme to be used by the concessionaire, the hours during which he shall operate, the tickets to be used (furnished by the association), and binds him to accept employees designated by the association and to honor all passes issued by it, and to abide by the rules of the association generally. He is thus in large measure circumscribed by the general management of the park authorities and subject to their control in every important aspect involved in running the concession, even to the type of amusement device, the lease specifying that it is for the operation of the "Scrambler," upon which the plaintiff was injured. His patrons are the invitees of the association who granted the concession. In Frear *v.* Manchester Traction, Light & Power Co., 83 N. H. 64 (139 Atl. 86, 61 A.L.R. 1280), the court, in discussing the owner's liability for injury due to the negligence of a concessionaire, held as follows: "Ownership or control of property is often of importance as tending to show what the invitation was. But, when the fact of invitation is otherwise shown, this feature of the situation is not controlling. Liability to invitees is not imposed merely because of ownership, but because of the invitation. If the invitation includes a representation of ownership or control, justice and reason require that the invitor may be taken at his word in that aspect of the case as well as in others." And it has been generally held that a defendant amusement park proprietor may not be relieved of his duty to keep the premises safe for his invitees by leasing portions of his grounds to proprietors of

580

shows and attractions and becoming their landlord, as, between him and the public, he still has a general duty to see that the exhibition grounds are safe for those whom he induces to come upon them. See Thornton *v.* Maine State Agricultural Society, 97 Me. 108 (53 Atl. 979); Whyte *v.* Idora Park Co., 29 Cal. App. 342 (155 Pac. 1018); Johnstone *v.* Panama-Pacific International Exposition Co., 187 Cal. 323 (202 Pac. 34); Szasz *v.* Joyland Co., 84 Cal. App. 259 (257 Pac. 871); Rubin & Cherry Shows *v.* Dinsmore, 88 Ind. App. 616 (164 N. E. 304); 62 C. J. 872. We do not find where this rule of law has been applied in this State, and the facts of this case do not justify or require this court to determine whether or not this latter rule of law should be so applied, because the defendant Southeastern Fair Association here, by its lease agreement, not only retained specific control of stated operations in the management of the concession but also a general control over its operations by providing that its failure to comply with all rules and regulations would be grounds for immediate closure of the concession, as well as a rental based on a percentage of profits. The lease agreement therefore precludes this court from holding as a matter of law that the lessor had parted absolutely with control over the concession, and the trial court did not err in overruling the general demurrer of the defendant Southeastern Fair Association.

*Judgment reversed in case No. 33611. Judgment affirmed in case No. 33612. MacIntyre, P.J., and Gardner, J., concur.*