31877. CLINTON *v.* GUNN-WILLIS LUMBER COMPANY *et al.*

Decided July 12, 1948.  Rehearing denied July 31, 1948.

646

*John R. Wilson, Erle M. Donalson,* for plaintiff.

*Custer & Kirbo, Conger & Conger, Grover Middlebrooks,* for defendant.

MacIntyre, P. J. ■ The only special demurrers passed upon by the trial judge were those relating to a misjoinder of parties.

"It is a well-established general rule that, 'where two or more persons or corporations, acting independently, without concert, plan, or other agreement, inflict a damage or cause an injury to another person, the persons inflicting the damage are not jointly liable therefor, but each is liable for his proportion only of the damages; and in such a case a joint action against them can not be maintained.' . . . But it is also true that, even though voluntary, intentional concert is lacking, if the separate and independent acts of negligence of several combine naturally and directly to produce a single injury, they may be sued jointly, despite the fact that the injury might not have been sustained had only one of the acts of negligence occurred." *Scearce* v. *Gainesville,* 33 *Ga. App.* 411 (126 S. E. 883).

We think the trial judge erred in sustaining the special demurrers as to misjoinder of parties.

■ The only question remaining for our determination is whether or not the petition sets forth a cause of action against the defendants as against a general demurrer.

As shown above the plaintiff alleges that the defendants failed to exercise ordinary care and diligence, and that such negligence was wilful and wanton in that the decedent was exposed to a concealed danger in the nature of and the equivalent to a mantrap

created and maintained by the defendants on the premises of the Lumber Company, where and at a time when the presence of the decedent should have been anticipated by the defendants, of which hidden peril the defendants were fully cognizant and of which the decedent was unaware.

The petition further alleges that the defendants were negligent in maintaining an attractive nuisance, the theory of which is based upon the "turntable cases."

Even though it is necessary for the plaintiff to allege that he had permission from the owner of the premises on which he had entered at the time he was injured, or that the defendant knew of his presence at the scene of his injury (*Augusta Ry. Co.* v. *Andrews,* 89 *Ga.* 653 (2), 16 S. E. 203), in the instant case the petition met this requirement by alleging that the defendants had knowingly permitted large numbers of children, almost every day, to play in and around and on top of the sawdust pile which was located in plain view of the public streets of the City of Bainbridge.

Where the defendants were aware of the custom of children to play in and around the sawdust pile, the defendants are bound to anticipate the presence of such children and are under a duty to use ordinary care to avoid injuring them after their presence is known or reasonably should be anticipated. *Bullard* v. *Southern Ry. Co.,* 116 *Ga.* 644 (43 S. E. 39) ; *Central of Georgia Ry. Co.* v. *Pelfry,* 11 *Ga. App.* 119 (74 S. E. 854) ; *Wise* v. *Atlanta & W. P. R. Co.,* 61 *Ga. App.* 372 (6 S. E. 2d, 135). See, in this connection, *Mills* v. *Central of Georgia Ry. Co.,* 140 *Ga.* 181 (78 S. E. 816, Ann. Cas. 1914C, 1098).

"Though useful in many ways and for various purposes indispensable in these days of varied activities, the force called electricity is an instrumentality of a highly dangerous character, and, if not properly confined in its place, it may maim or ruthlessly destroy life and property. Although generally serviceable and capable of beneficial use when properly insulated and controlled, yet, when defectively insulated or carelessly employed, the current resembles the legendary thunderbolts of mythical deities, destroying all who cross its path. The more inherently powerful an instrumentality, the greater the duty to exercise a commensurably high degree of diligence and care to prevent

danger from its employment in the varying phases of business activities to which it is adapted and applied. Whenever and by whatever mode or method any dangerous agency is handled, the one responsible therefor is necessarily and legally bound to the highest measure of skill and care in dealing with it, to the end that the lives and the property of others without fault may not be injured or destroyed by contact with it." Love v. Virginian Power Co., 86 W. Va. 393 (103 S. E. 352). " 'A company maintaining an electric line, over which a current of high and dangerous voltage passes, in a place to which it knows or should anticipate others lawfully may resort for any reason, such as business, pleasure or curiosity, and in such manner as exposes them to danger of contact with it by accident or inadvertence, is bound to take precaution for their safety by insulation of the wire or other adequate means.' " Graham v. Sandhill Power Co., 189 N. C. 381 (127 S. E. 429).

The degree of care required of the company furnishing electricity to prevent injury from exposure to this dangerous and death-dealing agency is measured by the danger itself. The company must exercise this alertness not only under the conditions which exist when its wires are placed and of which it has actual knowledge, but it must also exercise this care in the light of changing conditions of which it should have knowledge. In the case sub judice the electric wires were erected before the sawdust pile was allowed to accumulate. The petition shows that the child was a licensee and " 'to the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, mantraps, and things of that character.' " Banks v. Watts, 75 Ga. App. 769, 772 (44 S. E. 2d, 510). Viewing the deceased as a licensee, the defendants owed the child a duty to refrain from wilfully or wantonly injuring him, or wantonly and recklessly exposing him to hidden perils, and a duty to exercise ordinary care to avoid injuring him after his presence on the premises was known or should have been discovered. Ibid., 773.

We are of the opinion that one who maintains a dangerous instrumentality or carries on a dangerous active operation on his premises, or recklessly exposes a licensee to a dangerous and

deceptive situation amounting to a hidden peril in the nature of a mantrap, pitfall or the like, with the knowledge that children are in the habit of resorting there for amusement, or when by the exercise of ordinary care he ought to know that children are in the habit of going there to play, whether the instrumentality, operation or situation is an attractive nuisance or not, is liable for an injury sustained by one of the children. *Bohn* v. *Beasley*, 51 *Ga. App.* 341 (180 S. E. 656); *Leach* v. *Inman*, 63 *Ga. App.* 790, 792, 793 (12 S. E. 2d, 103). Placing a sawdust pile in this particular location was a lawful use of the premises by the lumber company. We think that, under the allegations of the petition, the power company was bound to anticipate such a lawful use of the premises by the lumber company and that it had an obligation, under the allegations of the changing circumstances of which it should have had notice in the exercise of ordinary diligence, to use due care in taking precautions for the safety of the children, whose lawful presence upon the sawdust pile was discovered or in the exercise of ordinary care should have been anticipated and who might come in contact with the highly charged wires, by insulating the electric wires, by moving them to a place where they could not cause injury, or by taking some other adequate means of precaution. *Love* v. Virginian Power Co., supra; *Savannah Lighting Co.* v. *Harrison*, 20 *Ga. App.* 8 (92 S. E. 772); *Southern Bell Tel. &c. Co.* v. *Howell*, 124 *Ga.* 1050 (53 S. E. 577, 4 Ann. Cas. 707); Meyer *v.* Menominee Light &c. Co., 151 Wis. 279 (138 N. W. 1008); Graham *v.* Sandhill Power Co., supra; Parsons *v.* Appalachian Elec. Power Co., 115 W. Va. 450 (176 S. E. 862, 100 A. L. R. 615).

In the case of Graham *v.* Sandhill Power Co., supra, it is said at page 393 that: "The great weight of authorities sustain the contention of plaintiff in this case. The development of electric power is of vast importance to the commercial, domestic, and civic life of our people, and should be encouraged. Electricity is an invisible and subtle power. In the manufacture and distribution it requires trained and skilled artisans. People, unless educated in the use of it, know little about its deadly qualities. It can only be discovered by the touch, and that brings bodily affliction and death if there is a high voltage in the wires. Those who are engaged in the business are held by the courts to the

highest degree of care in its manufacture and distribution. The protection to be given the uninformed public, especially children, is not burdensome or expensive. Naked wires can be easily clothed—insulated."

The mere placing of a sawdust pile in the particular location here alleged, in so far as the location was concerned, would be a lawful use by the lumber company of its premises; but when for many months the sawdust pile had been negligently allowed to accumulate in such tremendous proportions as to cause the top of the same to be within four and one-half feet from an uninsulated wire, strung on poles about 100 yards apart, which conveyed an electric current of 2,300 volts by which the sawmill was operated, and which wire, because of the negligence of the power company, had been allowed to sag between said poles and over the huge sawdust pile to an extent that the negligence of both defendants contributed in causing a dangerous situation to exist, in the nature of a "mantrap," by allowing this deadly and invisible current of electricity to be conveyed in such close proximity to the top of said sawdust pile, where children, among whom was the decedent, were permitted to play—all of which circumstances were alleged in the petition—this separate and independent act of the defendant lumber company combined with the separate and independent act of the power company to naturally and directly produce the single injury; and they became negligent acts for which both the defendants may be sued jointly despite the fact that the injury might not have been sustained had only one of the acts of negligence occurred. The danger here would not have existed but for the placing and maintaining of the sawdust pile and the construction of the wires by the power company and its transmission of electricity through them in their uninsulated and sagging condition. The evidentiary facts pleaded were such as demanded the inference of the existence of a dangerous and deceptive situation amounting to a hidden peril, which was a thing of like character to a mantrap and which situation was denominated by the pleader as a mantrap; and under all the allegations of the petition was the equivalent of pleading the ultimate fact of wilful and wanton negligence. *Leach* v. *Inman,* 63 *Ga. App.* 790, 794 (supra).

In the instant case the power company's wires were sagging to

within about four and one-half feet of the sawdust pile, which the lumber company had allowed to accumulate under the wires on its premises, and were naked live wires carrying a high voltage—a deadly current of electricity. The sawdust pile itself was within the corporate limits of the City of Bainbridge and was within 63 feet of the intersection of Washington and Columbia Streets, in plain view of these streets, and in a thickly settled community in which lived a large number of children who for a long period of time the lumber company had permitted to play on such sawdust pile. This was known, or by the exercise of ordinary care ought to have been known to the defendants. In the case of *Atlantic Coast Line R. Co.* v. *Corbett*, 150 *Ga.* 747 (105 S. E. 358), it is stated that the rule adopted in *Ferguson* v. *Columbus & Rome Ry.*, 75 *Ga.* 637, and *American Telephone &c Co.* v. *Murden*, 141 *Ga.* 208 (80 S. E. 788), sometimes referred to as the "turntable cases," will not be extended. See also *Southern Cotton Oil Co.* v. *Pierce*, 145 *Ga.* 130, 132 (88 S. E. 672). We think that, irrespective of whether or not the sawdust pile was an attractive nuisance, the petition sets forth a cause of action against both defendants under the law of negligence. The petition supports the theory that if the concurrent acts of each defendant were the two causes which combined to produce the injury neither defendant would be relieved from liability. In such a case a party is not relieved from liability because he was responsible for only one of the acts, where his act was a negligent one, for even the negligence of two or more persons may concur and each be liable. There may be two or more proximate causes but only one immediate cause of the injury. *Southern Grocery Stores* v. *Greer*, 68 *Ga. App.* 583, 591 (23 S. E. 2d, 484). See also *Rome Ry. & Light Co.* v. *Jones*, 33 *Ga. App.* 617 (127 S. E. 786).

However, the circumstances in proof must be such as to show some negligence on the part of the power company. The mere maintenance of a high-tension wire is not negligence and in order to hold the power company liable it must have been shown to have omitted some precaution that should have been taken; and, likewise, in order to hold the lumber company liable for the injury or death of the decedent, it must have been shown to have committed some act of negligence that is alleged in the petititon.

We think that the petition sets forth a cause of action against both defendants, and that the trial judge erred in sustaining their general demurrers.

*Judgment reversed.  Gardner and Townsend, JJ., concur.*