## 32325. MACON TELEGRAPH PUBLISHING COMPANY v. GRADEN.

DECIDED APRIL 21, 1949. REHEARING DENIED MAY 12, 1949.

*Harris, Harris, Russell & Weaver,* for plaintiff in error.

*H. B. Bell, Hall & Bloch, Denmark Groover Jr.,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ ■ The petition alleges that a certain street of the City of Macon was set aside to the defendant to sponsor the "Soap Box Derby" at which the plaintiff was injured.

The premises where the race was being conducted at the time of the injury to the plaintiff having been set aside to the defendant for the purpose of sponsoring and conducting the same, the defendant was at the time the occupier of the premises within the meaning of Code § 105-401, which provides as follows: "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe."

■ The petition alleges that the public was invited to be present upon these premises which had thus been set aside to the defendant; that the benefit the defendant received from the arrangement was valuable advertising; and that pursuant to this invitation the plaintiff attended the race. She was therefore an invitee. The status of an invitee is not dependent here upon an invitation implied by law. The petition alleges that the defendant, through the press and radio, invited and urged the public to attend the contest. Black's Law Dictionary (3rd ed., p. 1007) defines an invitee as one who is at a place at the invitation of another. See also *Crossgrove* v. *Atlantic Coast Line R. Co.,* 30 *Ga. App.* 462 (118 S. E. 694, 695). Therefore, under the allegations of the petition, the defendant became an invitee by express invitation to the public generally, which included her.

■ The defendant as the occupier of the premises owed to the spectators who were present at its invitation, including the plaintiff, ordinary care in keeping the premises safe for them.

See *Goettee* v. *Carlyle,* 68 *Ga. App.* 288 (1) (22 S. E. 2d, 854);
*Moone* v. *Smith,* 6 *Ga. App.* 649 (67 S. E. 712).

█ Whether or not the acts of the defendant, alleged to be
negligence with reference to its manner of conducting the races,
and whether or not the place provided by the defendant for the
occupancy of those who came to see the contest, including the
plaintiff, amounted to the lack of the exercise of ordinary care
on the part of the defendant toward the plaintiff, are questions
for the jury. Whether or not the plaintiff was lacking in the
exercise of ordinary care for her own safety at the time of her
injury, and whether or not she assumed the risk of the danger of
her position, are also questions for the jury. The jury deter-
mines, not only whether or not the conditions as alleged were
true, but whether or not they amount to negligence and the
degree thereof.

Where certain specified conduct is charged as a required degree
of negligence in order to make the defendant liable, it is generally
a question for the determination of the jury as to whether or
not such conduct amounts to the degree of negligence charged.
See Klause *v.* Neb. State Board of Agric., 150 Neb. 466 (35 N.
W. 2d, 104); also *Southern Stages* v. *Clements,* 71 *Ga. App.* 169
(2) (30 S. E. 2d, 429). It is always a jury question where the
conduct charged and relied upon is such that different minds might
reasonably draw different conclusions therefrom. *Jordon* v. *Lee,*
51 *Ga. App.* 99 (179 S. E. 739); 22 R. C. L. (Proximate Cause),
148, § 31; Moody *v.* Gulf Refining Co., 142 Tenn. 280 (218 S.
W. 817); Teis *v.* Smuggler Min. Co., 158 Fed. 260 (15 L. R. A.,
(N. S.) 893); Pilmer *v.* Boise Traction Co., 14 Idaho 327 (94 Pac.
432); Stone *v.* Boston, etc., R. Co., 171 Mass. 536 (51 N. E. 1);
Huber *v.* LaCrosse City Ry. Co., 92 Wis. 636 (66 N. W. 708).
However, where such conduct is susceptible of but the one in-
ference, that it does not amount to the degree of negligence
charged, a demurrer to the pleading so charging it must be sus-
tained. *Lester* v. *Foster,* 40 *Ga. App.* 500 (150 S. E. 433); 45
C. J. 1279, § 852; Moody *v.* Gulf Refining Co., supra; Clark *v.*
Wallace, 51 Colo. 437 (118 Pac. 973); *Bass* v. *Southern Enter-
prises,* 32 *Ga. App.* 399 (2) (123 S. E. 753).

The negligence charged in the petition in the instant case is

such that different minds might draw different conclusions therefrom and is therefore a jury question.

■ ■ The grounds of special demurrer to the original petition, which were renewed to the petition as amended, and the additional grounds of special demurrer to the amended petition, generally speaking, contend that the allegations of the petition, to the effect that the cars used in the race, including the car that struck the plaintiff, were of flimsy construction, that they were improperly inspected, that the operators were not required to demonstrate skill, that the rate of speed exceeded 25 miles per hour, that they were launched from a high ramp which practice was not suspended after several cars had been wrecked before the plaintiff was injured, and that they were built and driven by children whose ages and experiences were limited, are irrevelant and immaterial. These allegations are relevant and material as descriptive of the general conditions under which the "Soap Box Derby" was being sponsored and conducted by the defendant. Also the amendment to the petition charges that the particular car which struck the plaintiff was in the same category as the others with reference to flimsiness of construction, lack of inspection, speed, conditions of operation, and lack of experience, on the part of the operators. These allegations throw light on the question of whether or not the defendant was negligent in the manner in which it conducted the entertainment; its knowledge of the dangers to the invitees, including the plaintiff; also on the question of whether or not the plaintiff was guilty of contributory negligence, and whether or not the dangers were so apparent to her that she assumed the risk. The said allegations have some materiality, and the trial court did not err in overruling the special demurrers seeking to have them stricken from the petition. See *Southwestern R. Co.* v. *Davies*, 53 *Ga. App.* 712, 716 (186 S. E. 899). Also *Goble* v. *Louisville & Nashville R. Co.*, 187 *Ga.* 243, 257 (200 S. E. 259).

■ Other grounds of special demurrer contend that the allegations of the petition charging acts of the defendant to be negligence—in failing to provide a barrier to prevent the racing cars from leaving the race course and running into the plaintiff and other spectators, in failing to provide adequate and safe places

from which spectators and the plaintiff could view the races, and in sponsoring and operating a dangerous instrumentality in a public and crowded place—constitute conclusions of the pleader unsupported by any factual allegations in the petition. These general averments that constitute conclusions of the pleader must be construed to have reference to specially pleaded facts which are set forth in the petition and which warrant the conclusions. See *North British &c. Ins. Co.* v. *Parnell,* 53 *Ga. App.* 178 (1) (185 S. E. 122); *Western & Atlantic R. Co.* v. *Roberts,* 144 *Ga.* 250 (86 S. E. 933); *Lemon* v. *Lemon,* 141 *Ga.* 448 (81 S. E. 118); *Georgia R. & Banking Co.* v. *Sewell,* 57 *Ga. App.* 674 (4) (196 S. E. 140); *Richardson* v. *Pollard,* 57 *Ga. App.* 777 (4) (196 S. E. 199).

Whether or not the conclusions complained of are warranted by the specific allegations upon which they are based will ultimately become a question for the jury, based on all the evidence, and the trial court did not err in overruling these grounds of special demurrers. The judgment overruling both the general and special demurrers is without error.

This case was considered by the whole court as provided by the act approved March 8, 1945 (Ga. L. 1945, p. 232).

*Judgment affirmed. Sutton, C. J., MacIntyre, P. J., and Gardner, J., concur. Felton and Parker, JJ., dissent.*

FELTON, J., dissenting. Paragraph 23 of the petition sets forth the following acts and omissions alleged to be the proximate cause of the injuries: "(a) Failing to provide a barrier to prevent the racing cars from leaving the race course and running into the plaintiff and other spectators; (b) failing to provide adequate and safe places from which spectators could view the races; (c) failure to take adequate steps to protect the public they knew or should have known would attend the races; (d) failure to make the premises safe for the plaintiff and other spectators; (e) failure to properly and adequately inspect and determine that the racing cars were in good mechanical condition and free from danger to the public; (f) failure to exercise due care and diligence in determining the qualifications and abilities of the drivers; (g) in permitting, encouraging, and inviting speeds in excess of the legal rate, to wit, twenty-five miles per hour, and failure to exercise ordinary care and diligence

to safeguard the petitioner, and persons similarly situated, against the consequences of such negligent and excessive rate of speed; (h) in negligently and without regard to the safety of others, launching cars from a high ramp so that extraordinary speed would be attained; (i) in negligently and carelessly failing to remove and desist in the use of the ramp when it became apparent such practice was dangerous to spectators and drivers; (j) in sponsoring and operating a dangerous instrumentality in a public and crowded place."

Nowhere in the petition as amended is it alleged that the flimsiness of the car, the incompetence of the driver, or the speed of the car caused or contributed to the car's going out of control and striking the plaintiff. Nor is it alleged that the speed or construction of any of the other cars caused or contributed to the injuries, nor was it alleged that the incompetence of any other driver caused or contributed thereto. A fair construction of the petition is that by reason of the acts of negligence alleged the Macon Telegraph should have erected barriers or instructed the plaintiff to stand in a safe place. It should be construed to mean that without such negligence there would have been no need for a barrier and no negligence for having failed to provide one. Indeed, the plaintiff in her brief concedes this conclusion by this statement: "We do not believe there is an inherent danger of runaway cars at a Soap Box Derby. The distinction between such a contest and a contest that has such dangers is clear." The action then is predicated on the theory that the races were dangerous only because of the alleged negligence of the defendants. It necessarily follows that the charge against the defendants is the failure to protect the plaintiff from the consequences of their negligence. If the action is predicated on the alleged initial negligence charged, and not on the failure to protect the plaintiff from it, the action would fall because the alleged acts are not alleged to have been the proximate causes of the injuries. If the alleged acts were not the proximate cause, they were not actionable negligence, and it therefore follows that, if there is no liability for negligent acts which are not alleged to be also the proximate cause of the injury, there would be no liability for a failure to protect the plaintiff from the alleged negligent acts which were not alleged to be the proximate cause

of the injuries. A party cannot do indirectly what he cannot do directly. He cannot make a case for failure to guard against negligence which would not in the first instance constitute actionable negligence. Eliminating the alleged negligence of the defendants not alleged to have caused or contributed to the injuries, I do not think that a cause of action is stated. I think that the doctrine of assumption of risk applies. It is common knowledge that "Soap Box" races are participated in by young boys; that they are required to build and operate their own cars; that speed is the object of the contest, etc. Such contests are put on about once a year over a very short period of time. I think that those who accept an invitation to witness such a contest are charged with the knowledge of whatever dangers are incident thereto and they assume the risks involved. Of course, there may be cases where a sponsor would be liable for negligence which was the contributing or proximate cause of an injury, but the negligence must be alleged and proved, and if sufficiently alleged could not be proved by the application of the doctrine of res ipsa loquitur. In this case, the majority have applied that rule to the pleadings.

While the "Soap Box Derbies" may be of relatively recent origin, the principles of law which I think applicable in this case are of a rather more ancient and well-established origin. As I view the petition, the only major questions presented are the duty of the defendant as occupier of the premises, and whether or not the petition, being construed most strongly against the pleader as it must be as against demurrer, shows a breach of that duty. From a consideration of the numerous cases contained in the following annotations:—22 A. L. R. 629-685; 29 A. L. R. 30; 38 A. L. R. 358; 44 A. L. R. 205; 53 A. L. R. 857; 61 A. L. R. 1291; 98 A. L. R. 650; 142 A. L. R. 868; 13 N. C. C. A. (N. S.) 223-253; 20 N. C. C. A. 699-702; 21 Case and Comment 718-727; 1 Thompson, Negligence, §§ 994-999, 4 Sherman & Redfield, Negligence, pp. 1562-1570; 3 Cooley, Torts, § 440; 40 Mich. L. Rev. 137-40; 38 Mich. L. Rev. 556-8; 49 Law Q. Rev. (Eng.) 156-8; 40 Harv. L. Rev. 14; 40 Harv. L. Rev. 90—I conclude that the rules developed and applied to sporting events and places of amusement, theatres, stadia, parks, etc., on the question of the duty of the owner or occupier of the premises to the invitee,

are neither more nor less than the rules applicable to the possessor of land to his invitee, with an added emphasis placed upon the ancillary doctrine of "assumption of risk" or "incurred risk." Whether, as to the condition of the premises or the activity being carried on there, the general rule of duty is: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon, if, but only if, he (a) knows, or by the exercise of reasonable [ordinary] care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable [ordinary] care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm. . ." (2 Restatement, Law of Torts, § 343); or to state the rule in the words of Buckley, L. J., in Indermaur v. Dames, L. R. 1 C. P. 274, "the duty of the invitor towards the invitee is to use reasonable care to prevent damage from unusual danger which he knows or ought to know. If the danger is not such that he ought to know of it, his liability does not extend to it," to which Scrutton, L. J., in Hall v. Brooklands Auto Racing Club, 1 K. B. (1933) 205, added: ". . there is no obligation to protect against a danger incident to the entertainment which any reasonable spectator foresees and of which he takes the risk." From the foregoing statements it follows, I think obviously, that the basis of the invitor's liability lies in his superior knowledge, either actual, constructive, or implied. However, if it appears that the invitee knows, actually, constructively, or impliedly, of the condition or hazard, there is no duty on the part of the invitor to warn the invitee of the danger or provide barriers to protect the invitee from the hazard. That is to say, "to the extent that the duty of self-protection rests upon the invitee, the duty of the invitor to protect is reduced." Ivory v. Cincinnati Baseball Club Co., 62 Ohio App. 514 (24 N. E. 2d, 837, 839). The invitor is not an insurer of the invitee's welfare while upon the premises. The care required of the invitor is that which is reasonably adapted to the character of

the activity which the invitee has been invited to witness. "It is a care commensurate with the particular conditions and circumstances involved in the given case." Berberet v. Electric Park Amusement Company, 319 Mo. 275 (3 S. W. 2d, 1025). There is no warranty from the invitor to the invitee that the premises, or the activity being conducted on the premises, are absolutely safe, but only that reasonable skill and care have been used to make them safe. The invitee as a spectator assumed the risk of such dangers as were incident to the running of the "Soap Box Derby," or which should have been obvious and apparent to her as a reasonable person under the circumstances in the light of her information and knowledge. Parker, J., concurs in the foregoing dissent.