## 51055. McKINSEY v. WADE.

Evans, Judge.

This case is an action for wrongful death. Robert Joel McKinsey, aged 16, was killed by a dynamite charge exploding in a *booby-trapped* cigarette vending machine on the premises of A. C. Wade, a liquor store operator in Cordele, Georgia. Ella Christine McKinsey, his mother, sued Wade for the wrongful death of her minor son.

Defendant admitted booby-trapping the vending machine with dynamite, but contended it was not for the purpose of killing the deceased. He contended the machine had been burglarized in the past, and he was merely attempting to scare the vandals. He made no test to determine what damage would be inflicted by activating the dynamite while in the vending machine.

Plaintiff admitted her minor son was in the act of committing a theft immediately before he was killed. She moved for summary judgment as to liability. The motion was denied, and plaintiff appeals. *Held:*

1. The duty of the property owner is not to wilfully or intentionally injure a trespasser. See in this connection, *Charleston & W. C. R. Co. v. Johnson,* 1 Ga. App. 441 (57 SE 1064); *Mandeville Mills v. Dale,* 2 Ga. App. 607, 609 (58 SE 1060); *Arrington v. Trammell,* 83 Ga. App. 107, 110 (62 SE2d 451).

2. The defendant may be guilty of a crime, either murder or some degree of manslaughter in this instance, but that question is not before us in a criminal prosecution as this is a civil action.

3. The wrongful death statute (Code Ch. 105-13) clearly provides for the recovery for the full value of the life of a human being resulting from a crime or criminal negligence. See Code Ann. §§ 105-1301, 105-1307. The law does not provide that if the human being is killed while in the performance of an unlawful act there shall be no recovery.

4. Both the facts and the law in this case are simple and uncomplicated. The defendant set a booby-trap by loading a vending machine with dynamite to protect his property. He probably reasoned that a thief who sought to take a few dollars out of a vending machine forfeited all

rights, including the right to live. He must have believed that the law afforded him the right of protection of his dollars and placed him in the superior position of killing one or a hundred people if it became necessary so to do in protecting his property. If he himself was a lawful citizen, selling liquor during the daytime and going home at night, those who came upon his premises for an evil purpose must suffer the consequences, no matter how severe, so he must have reasoned. It is significant that in placing dynamite into the vending machine, whereby it would be triggered and exploded upon tampering with the machine, he did not make one single test to determine how severe the resulting explosion might be. In other words, he deliberately set a booby-trap, or man-trap, or death-trap, and left it where it might work its destructive forces upon trespassers or wrong-doers on his property, and even an innocent person who might be nearby, even 100 or 200 yards away.

5. What is a mantrap? In *Crosby v. Savannah Electric Co.,* 114 Ga. App. 193, 198 (150 SE2d 563), it is held: "The doctrine of mantrap or pitfall is rested upon the theory that the owner is expecting a trespasser or a licensee and has prepared the premises to do him injury. Mosley v. Alabama Power Co., 246 Ala. 416 (21 S2d 305). A typical example is the setting of a spring or trap gun to stop or prevent depredations by animals or humans, as in *Wilder v. Gardner,* 39 Ga. App. 608 (147 SE 911). In that situation the owner expects that a trespasser will come, and deliberately sets a trap designed to do injury. It may result from the knowledge on the part of the owner of the existence of a dangerous or hazardous condition coupled with a conscious indifference to the consequences, so that a deliberate intent to inflict injury is inferable (*Louisville & Nashville R. Co. v. Young,* 112 Ga. App. 608, 613 (145 SE2d 700)); or from a dangerous condition hidden with sufficient cover to obscure it or to render it unobservable to one who approaches it. Cf. *Bohn v. Beasley,* 51 Ga. App. 341 (180 SE 656), and see *Fuller v. Louis Steyerman & Sons, Inc.,* 46 Ga. App. 830 (169 SE 508). The hazard is latent or concealed. *Central of Ga. R. Co. v. Lawley,* 33 Ga. App. 375 (4) (126 SE 273)."

Again, in *Kahn v. Graper,* 114 Ga. App. 572, 576 (152

SE2d 10) this court, speaking through Judge Eberhardt, holds: " 'The general rule supported by the authorities is that, while a landowner cannot intentionally injure or lay traps for a trespasser [or a licensee] upon his land, he owes no other duty to him.' Cooley, Torts (4th Ed.) 186, 199, § 440."

Also, the court holds: "The doctrine of mantrap or pitfall . . . may result from a knowledge of the owner of the existence of the dangerous condition coupled with a conscious indifference to the consequences, so that an intent to inflict injury is inferable." Id. And in *Central of Georgia R. Co. v. Ledbetter,* 46 Ga. App. 500, 504 (168 SE 81), it is held: "To the licensee, *as to the trespasser,* no duty arises of keeping the usual condition of the premises up to any given standard of safety, *except that they must not contain pitfalls, mantraps, and things of that character."* (Emphasis supplied.)

The foregoing authorities are sufficient to show that defendant set up a mantrap, or deathtrap; that he had no right to do so, even as against a wrongdoer, and that where injury results therefrom, even to a wrongdoer, he is liable.

6. But let us set forth one additional principle of law which leaves it beyond peradventure that defendant had no right to defend his wrongful, unconscionable, and destructive conduct by showing that the minor son of plaintiff was engaged in theft of his vending machine. What negligence did the minor son commit? He was a trespasser and engaged in petty theft. What wrong did the defendant commit? He had an abandoned and malignant heart; he set a deathtrap with dynamite, never testing it to determine how many innocent persons might be killed if within 100 to 200 yards of it, and thus sought to protect his several dollars in the vending machine. *He had a conscious indifference to consequences, and by all the tried-and-tested rules of our laws, he was guilty of wilful and wanton negligence.* See *Carr v. John J. Woodside Storage Co.,* 217 Ga. 438, 443 (123 SE2d 261). There need be no actual intent by defendant; his conscious indifference to consequences is all that is required to characterize his negligence as *wilful and wanton conduct.*

7. Where a party's negligence is wilful and wanton,

he is debarred from pleading that the other party was a trespasser, or was negligent or was a wrongdoer. These are not defenses to the one who is wilfully and wantonly negligent. There is no duty of a plaintiff to exercise ordinary care to avoid the injury as against a defendant who commits wilful and wanton negligence. *Central R. & Bkg. Co. v. Newman,* 94 Ga. 560 (2) (21 SE 219). A deaf person who walks down a railroad track commits a high degree of negligence. But if he is struck by a train that approaches him from the rear, and the engineer is guilty of wilful and wanton negligence, the negligence of the plaintiff is immaterial. *Central R. & Bkg. Co. v. Denson,* 84 Ga. 774 (11 SE 1039); and it is held (p. 778) that *although plaintiff by exercise of ordinary care could have avoided the defendant's negligence, yet if defendant's negligence is so gross as to amount to wanton and wilful negligence, the want of ordinary care by plaintiff would be no bar to a recovery for the injury received.* Also see *Lowe v. Payne,* 156 Ga. 312, 315 (118 SE 924).

8. In this case, the plaintiff moved for summary judgment as to liability, which motion was denied. Under the facts and circumstances in this case, that judgment is erroneous and is reversed and remanded with direction that summary judgment as to liability be entered up on behalf of plaintiff.

*Judgment reversed. Deen, P. J., and Stolz, J., concur.*

ARGUED SEPTEMBER 9, 1975 — DECIDED SEPTEMBER 26, 1975 — REHEARING DENIED OCTOBER 9, 1975 —

*Roberts & Roberts, David N. Rainwater,* for appellant.

*G. Mallon Faircloth,* for appellee.