A97A1936. QUEEN et al. v. CITY OF DOUGLASVILLE.
(500 SE2d 918)

BEASLEY, Judge.

This is an action for damages arising from an incident in which two young girls were struck by a train while attending an Independence Day parade held by defendant City of Douglasville. The Independence Day parade through downtown Douglasville has been held for more than 30 years. Since 1992 the parade has been planned and sponsored by defendant. The parade route which has not changed over the years uses the main thoroughfare through the center of the city which is known alternately as Highway 78, Bankhead Highway, and in the business district, as Broad Street.

Both parallel and adjacent to the parade route section of Highway 78 is the right-of-way and rail line of Norfolk Southern Railway Company. There is a grassy slope, from the railroad line down to the highway, which is a favored viewing spot for parade spectators.

On July 4, 1994, the two girls, Lisa Michelle Queen, age ten, and Rebecca Ann Queen, age twelve, accompanied their parents and little brother to Douglasville. They parked at a business location on Highway 78, then walked across and along that highway on the grassy median area separating it from the railroad tracks until they reached their desired spot for observing the parade. As they had arrived early, they were able to walk near the highway curb and their chosen observation position was at the highway curb. The family did not walk on or cross the railroad track in reaching their position at the curb.

Since the area where the family wanted to sit was damp, Lisa and Rebecca were sent back to the family vehicle to get a poncho to sit on. The girls returned to the vehicle by reversing the route they had come with their family. But on their return to the parade route, after they crossed Highway 78 they proceeded on across 45-50 feet of the grassy median and onto the railroad tracks. The girls walked on the railroad tracks looking down and talking. While they had no audible warning of the approaching train, Rebecca eventually looked up, saw the train, and jumped away from the tracks but reached back for her baseball cap; her arm was struck by the train. Lisa was hit by the train and killed.

Ronnie H. Queen, the girls' father, filed this action for the wrongful death of Lisa and for the injuries received by both girls. Claims against Norfolk Southern Railway Company have been dis-

missed with prejudice. The amended complaint seeks damages from the City on theories of nuisance, negligence, premises liability, and mantrap. The City's motion for summary judgment was granted, and Queen appeals.

1. *Nuisance.* We reverse the grant of summary judgment in favor of defendant. Instructive authority is the factually similar case of *Grier v. City of Atlanta*, 200 Ga. App. 575 (408 SE2d 794) (1991) in which this Court reversed a grant of summary judgment on a nuisance claim based on the maintenance of a public park bisected by a rail line. The parade route in the current case did not cross the rail line, but conduct of a public gathering of 10,000 or more persons along a parade route within 50 to 75 feet of a rail line on which trains were authorized to travel at up to 50 mph may have involved even more dangerous conditions than in *Grier*, where the train was subject to a speed limit of 10 mph.

Similarly to *Grier*, the evidence in this case shows a large level of pedestrian traffic across the rail line. Those who parked or lived on the opposite side of the tracks but desired to attend the parade often walked across the tracks with their families. Others watched the parade from the far side of the tracks. There was a large number of children of all ages at the parade, many of whom were not closely supervised and went on the tracks.

"In *City of Bowman v. Gunnells*, 243 Ga. 809, 811 (2) (256 SE2d 782) (1979), [the Supreme] Court established guidelines for determining whether a municipality will be liable for creating or maintaining a nuisance: the defect or degree of misfeasance must exceed mere negligence (as distinguished from a single act); the act complained of must be of some duration and the maintenance of the act or defect must be continuous or regularly repetitious; and there must be a failure of municipal action within a reasonable time after knowledge of the defect or dangerous condition." *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996).

The City contends that Queen has failed to describe a dangerous defect which it has created and maintained, but this is simply incorrect. The nuisance claim arises from misfeasance in the holding of the parade in an area which would cause congestion along the rails where trains would be running at high speed and is not predicated upon mere failures to act. There is evidence that the congestion and pedestrian traffic on and about the rail line had occurred in connection with the parade in prior years and that the City was well aware of these circumstances. And the dangerous conditions had been regularly repeated with each year's parade, although the 1994 parade was even more dangerous due to an increase in the speed limit applicable to passing trains.

The *Grier* decision disposes of two additional arguments submit-

ted by defendant. The fact that the injuries occurred on property owned by the railroad presents no bar to plaintiff's nuisance claim. The fact that there had been no prior occasion of injury on the railway tracks caused by the alleged nuisance does not support the grant of summary judgment on the nuisance issue. Id. at 576. Genuine issues of material fact remain for resolution by a jury on Queen's nuisance claim.

2. *Negligence.* In concluding that there was no evidence of the City's negligence, the superior court relied upon the public duty doctrine set forth in *City of Rome v. Jordan,* 263 Ga. 26 (426 SE2d 861) (1993). The summary judgment being appealed was entered before the decision in *Hamilton v. Cannon,* 267 Ga. 655, 656 (1) (482 SE2d 370) (1997), which limits the public duty doctrine to police officers and to police protection. The alleged negligent conduct goes beyond issues of police protection to the choices made by the City in planning the parade.

"Whether one who causes a crowd or group of people to foregather for some purpose such as a parade is liable for an injury suffered by one spectator . . . depends on the circumstances, and becomes a jury question where the minds of reasonable men differ as to whether the defendant was negligent in maintaining the premises, in controlling the crowd after notice of potential danger, or in failing to exercise ordinary care to anticipate and guard against injury the proximate cause of which is within its control." *Armburst v. Cox Broadcasting Corp.,* 117 Ga. App. 381, 382 (160 SE2d 609) (1968).

There was evidence that the City recognized the hazard posed by conducting the parade in close proximity to the rail line but continued to use the traditional route in order to pass the downtown commercial district and did so without providing any protection from this hazard. The negligence claim presents genuine issues of material fact for resolution by a jury.

In connection with the negligence claim, we note that the City has liability insurance covering the parade. See OCGA § 36-33-1.

3. *Premises liability and mantrap.* The trial court's judgment is affirmed with respect to the theory of premises liability.

The law provides: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1.

The City was neither owner nor occupier of the railroad tracks where the injury and death to the little girls occurred. Norfolk Southern's railroad tracks were on the railroad's right-of-way. It cannot be found that the City "occupied" the tracks on the theory that it did not stop people from crossing the tracks to get to and from the parade or

did not stop children from going upon the tracks to play. There is no evidence or contention that the City had permission to allow this or that Norfolk Southern knew this was occurring. In fact, the City had not even notified Norfolk Southern that the parade was to be held, and Norfolk Southern did not know of it.

Queen argues that the City was occupier on the strength of the fact that it "attracted, encouraged, lured and allowed parade spectators to view the parade from such location." It is true that the City kept the grassy slope which was located between the railroad track and the roadway mowed on a regular basis, and that the spectators viewed the parade from that slope. Even if that made the City an occupier for premises liability purposes, which is doubtful at the least, it did not attract, encourage, lure or allow spectators to view the parade from the railroad track.

The sole case relied upon by Queen with respect to this theory of occupancy is *Macon Tel. Publishing Co. v. Graden*, 79 Ga. App. 230 (53 SE2d 371) (1949). In that case the municipality (not a defendant) had set aside for the defendant sponsor a certain street for the purpose of a soapbox derby and the viewing thereof by the public. A spectator was injured on those premises by a runaway racing car and sued the derby sponsor. The court ruled that the sponsor was occupier of that street for the event, for the purposes of the premises liability statute. The facts here are dissimilar; the railroad track, and for that matter the slope, had not been set aside by the railway company for the use of the City in holding the parade. The City did not occupy the track.

For the same reason, the City cannot be held liable in this case on a claim of mantrap. The doctrine of mantrap applies to a species of premises liability cases. Thus it applies to the duties owed by owners or occupiers of property. See, e.g., *Tollman v. Zamani*, 224 Ga. App. 518 (481 SE2d 232) (1997) (claim of mantrap-caused injury to licensee on property of defendants).

As stated in *Wren v. Harrison*, 165 Ga. App. 847, 848-849 (303 SE2d 67) (1983): "An owner [or occupier] owes to a licensee no duty as to the condition of the premises save that he should not knowingly let him run upon a hidden peril or wilfully cause him harm. This is the obligation not to lay for him or permit to exist pitfalls or mantraps in which it may be reasonably anticipated he will become ensnared." (Citations and punctuation omitted.) See OCGA § 51-3-2 (b).

The mantrap cases cited by Queen all involve defendants who were owners or occupiers of the premises on which the alleged mantrap causing the injury was located. *McKinsey v. Wade*, 136 Ga. App. 109 (220 SE2d 30) (1975) (injury on premises of store operator); *Brooks v. Logan*, 134 Ga. App. 226 (213 SE2d 916) (1975) (plaintiff child stepped in hole in defendants' yard); *Kahn v. Graper*, 114 Ga.

App. 572 (152 SE2d 10) (1966) (suit against owner of building); *Clark v. Rich's, Inc.*, 114 Ga. App. 242 (150 SE2d 716) (1966) (injury in defendant merchant's parking lot); *Crosby v. Savannah Elec. &c. Co.*, 114 Ga. App. 193 (150 SE2d 563) (1966) (defendant was owner of power pole and high voltage wires); *Clinton v. Gunn-Willis Lumber Co.*, 77 Ga. App. 643 (49 SE2d 143) (1948) (owner of sawmill and owner of electric wires).

Instructive here is the statement of the Court in *Crosby*: "The doctrine of mantrap or pitfall is rested upon the theory that the owner is expecting a trespasser or a licensee and has prepared the premises to do him injury. [Cit.]" 114 Ga. App. at 198. See also *Hawkins v. Brown*, 228 Ga. App. 311, 313 (2) (491 SE2d 423) (1997), which quotes *Crosby* and discusses the doctrine of mantrap and its application. Given the evidence in favor of Queen in this case, he could not recover against the City on the claim that the railroad track was a mantrap for which the City was responsible.

The case shall be tried on the claims of negligence and nuisance.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Smith, J., concur. Andrews, C. J., concurs in the judgment only. McMurray, P. J., Ruffin and Eldridge, JJ., concur in part and dissent in part.*

McMURRAY, Presiding Judge, concurring in part and dissenting in part.

I concur with Divisions 1 and 2 of the majority opinion which reverse the grant of summary judgment in favor of defendant on plaintiff's nuisance and negligence claims. However, I am unable to join the majority in approving of the grant of summary judgment to defendant on plaintiff's premises liability and mantrap claims. Therefore, I respectfully dissent to Division 3 of the majority opinion.

In my view, the superior court also erred in granting summary judgment as to plaintiff's premises liability claim. While defendant did not own the railroad right-of-way, a jury could reasonably conclude that defendant occupied those premises each Independence Day by conducting the parade in such a manner as to encourage the use of that premises by the attending crowd. As occupier of the premises, defendant owed to the spectators, who were present at its invitation and thus invitees, ordinary care in keeping the premises safe. *Macon Tel. Publishing Co. v. Graden*, 79 Ga. App. 230, 233 (1) (53 SE2d 371). Under this theory, defendant's liability would be predicated on its superior knowledge of the hazards posed by the railroad tracks. While defendant argues that plaintiff and his children had equal knowledge of the hazards, and also relies upon the defense of assumption of risk, the evidence on these issues is at least conflicting. Rebecca testified that she did not expect trains to be passing

during the parade, while defendant was aware that they had done so in the past and that it had not taken any precaution to lessen that danger through crowd control or by requesting that the trains pass at a reduced speed during the time the crowd would be present.

I would also hold that the superior court erred in granting summary judgment as to plaintiff's mantrap claim. The occupier of premises, as well as an owner, owes a duty to even a mere licensee or trespasser not to maintain a mantrap on the premises. *McKinsey v. Wade*, 136 Ga. App. 109 (220 SE2d 30); *Clark v. Rich's, Inc.*, 114 Ga. App. 242 (150 SE2d 716). The doctrine of mantrap or pitfall is based on the theory that the owner or occupier is expecting a trespasser or licensee and has prepared the premises to do him harm. However, a mantrap may result from the knowledge on the part of the owner or occupier of the existence of a dangerous condition coupled with a conscious indifference to the consequences, so that an intent to inflict injury is inferable. *McKinsey v. Wade*, 136 Ga. App. 109, 111 (5), supra; *Brooks v. Logan*, 134 Ga. App. 226 (213 SE2d 916); *Kahn v. Graper*, 114 Ga. App. 572 (152 SE2d 10). The evidence of record would authorize such a finding in this case.

I am authorized to state that Judge Ruffin and Judge Eldridge join in this opinion.

DECIDED APRIL 3, 1998 — ■■■■■■■■■

*Parker & Lundy, William L. Lundy, Jr., Johnny R. Pannell*, for appellants.

*Hawkins & Parnell, Charles R. Beans, Michael J. Goldman*, for appellee.