S98G1208. CITY OF DOUGLASVILLE v. QUEEN et al.
(514 SE2d 195)

HUNSTEIN, Justice.

Twelve-year-old Rebecca Ann Queen was injured and ten-year-old Lisa Michelle Queen was killed when they were hit by a Norfolk Southern Railroad train. The girls were walking on the railroad tracks while traveling from their family's car back to their parents, who were positioned on railroad property adjacent to Highway 78 in downtown City of Douglasville awaiting the City's annual Fourth of July parade. Ronnie Queen, as parent and next friend of the girls and as administrator of Lisa Michelle's estate, brought suit against the City and the railroad.[1] Insofar as the City is concerned,[2] Queen's complaint as amended alleged negligence based on numerous instances of the City's failure to act,[3] nuisance, premises liability and

---

[1] The complaint against the railroad was dismissed with prejudice.
[2] It is uncontroverted that the City's sovereign immunity was waived by the purchase of insurance. OCGA § 36-33-1.
[3] The acts of nonfeasance Queen attributed to the City included: failure to notify the

mantrap. The trial court granted the City's motion for summary judgment and the Court of Appeals affirmed the trial court's rulings on the mantrap and premises liability claims but reversed the grant of summary judgment on the negligence and nuisance claims. *Queen v. City of Douglasville*, 232 Ga. App. 68 (500 SE2d 918) (1998). We granted the City's petition for writ of certiorari to consider whether, as a matter of law, a city in conducting a discretionary exercise owes its citizens a duty to protect them from harm caused by third persons. Finding no such affirmative duty exists, we reverse the Court of Appeals and affirm the grant of summary judgment to the City on Queen's negligence and nuisance causes of action.[4]

1. To state a cause of action for negligence in Georgia, we held in *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982) that there must be (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

> " 'Before negligence can be predicated upon a given act, some duty to the individual complaining must be sought and found, the observance of which duty would have averted or avoided the injury or damage. . . .' [Cit.]" *Porch v. Wright*, 116 Ga. App. 138 (1) (156 SE2d 532) (1967). " 'No matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that [it] should not have done, or failed to do something that [it] should have done pursuant to the duty owed the plaintiff.' [Cit.]" *Veterans Organization of Fort Oglethorpe v. Potter*, 111 Ga. App. 201, 205 (2) (141 SE2d 230) (1965).

*Cechman v. Travis*, 202 Ga. App. 255, 257 (2) (414 SE2d 282) (1991). Hence, the grant of summary judgment to the City was proper if the record establishes that Queen cannot prove the City had a duty to the Queen girls which it breached, either in regard to actions it

---

railroad company that the parade was taking place and to request that the trains reduce their speed; failure to warn parade spectators of the danger created by the tracks; failure to deter spectators from walking on the tracks; failure to maintain the safety of the premises for the spectators as invitees; and a failure to use ordinary reason, judgment, care and prudence in planning, organizing and conducting the parade, and its attendant visual and noise distractions, along the tracks without providing proper safeguards, safe parking, proper crowd control, and without anticipating or guarding against injuries.

[4] The remaining causes of action not addressed by this opinion are controlled by the Court of Appeals' affirmance of the grant of summary judgment.

affirmatively undertook or in regard to actions it failed to undertake. Accord *Young v. Wal-Mart Stores*, 209 Ga. App. 199 (433 SE2d 121) (1993) (regardless of age or capacity of the injured person, if there is no breach of any legal duty on part of defendant toward such person, there can be no legal liability).

2. Queen's complaint is cast exclusively in terms of the City's failure to act, i.e., acts of nonfeasance. The City is under no statutory obligation to perform any of the acts alleged in the complaint. Therefore, as a matter of law, Queen cannot establish any breach of duty in regard to the alleged nonfeasance, since OCGA § 36-33-2 expressly provides that "[w]here municipal corporations are not required by statute to perform an act, they may not be held liable for exercising their discretion in failing to perform the act." Accord *Tamas v. City of Columbus*, 244 Ga. 200, 202 (259 SE2d 457) (1979).

3. To the extent that Queen's allegations may be read as including acts of misfeasance, they likewise fail as a matter of law. The Court of Appeals reversed the grant of summary judgment to the City on Queen's negligence claim on the basis that fact questions remain whether the City committed an act of misfeasance when it held the Fourth of July parade in the vicinity of the railroad tracks. In regard to the affirmative act of planning and executing a parade, the City owed parade spectators a duty to exercise ordinary care for their protection. See generally *Bradley Center*, supra. The evidence, however, is uncontroverted that this duty was not breached by the City. The evidence establishes, inter alia, that the Queen girls were not injured by any participant in or spectator to the parade; they were not injured while on City property due to any defect the City knew or should have known to exist; they were not injured on private property by a dangerous condition created or maintained by the City; the City did not own, possess or exercise any degree of control over the railroad tracks where the Queen girls were injured; and the routing of the parade did not require spectators to sit on railroad property since there was a City sidewalk located directly across the street. Further, there is no evidence that the Queen girls were forced by any obstruction on City property to detour onto the railroad property, compare *Zettler v. City of Atlanta*, 66 Ga. 195, 196-197 (1880), or that the railroad tracks so closely adjoined the street that use of the street was thereby rendered unsafe and dangerous. Compare *Harrell v. Mayor &c. of Macon*, 1 Ga. App. 413, 415 (58 SE 124) (1907).

The record in this case reveals that there are no allegations asserted and no inferences adduced from the evidence that would create a question for the factfinder regarding the breach of any duty the City owed the Queen girls. Legal liability cannot be established by the bare fact that the girls were injured while awaiting the City's parade: "one who legally uses city streets for parade purposes is not

an insurer of the safety of the spectators." *Armburst v. Cox Broadcasting Corp.*, 117 Ga. App. 381, 383 (160 SE2d 609) (1968). Individuals attending a municipal parade may reasonably be expected to walk on train tracks adjacent to the parade route, just as they may reasonably be expected to park in commercial parking lots within walking distance of the parade or to traverse private property to reach the best locations for watching the parade; in doing so, they may also reasonably be expected to encounter hazards not created or maintained by the municipality. We decline to hold that the foreseeability of such situations places an affirmative duty upon a municipality to protect individuals from all privately-created and privately-maintained hazards they might encounter on the properties of third parties while approaching, viewing, and departing the parade. "[A] person is under no duty to rescue another from a situation of peril which the former has not caused. [Cits.]" *Alexander v. Harnick*, 142 Ga. App. 816, 817 (3) (237 SE2d 221) (1977).

4. The Court of Appeals also reversed the grant of summary judgment to the City on Queen's nuisance claim. "A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." OCGA § 41-1-1. "That which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance. [Cits.] . . . Thus, where the act is lawful in itself, it becomes a nuisance only when conducted in an illegal manner to the hurt, inconvenience or damage of another. [Cits.]" *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 425 (3) (b), (c) (249 SE2d 224) (1978).

It is not unlawful for a railroad company to operate trains on its property. OCGA § 46-8-100. It is not unlawful for streets within a city to be adjacent to railroad tracks. OCGA §§ 32-4-92; 46-8-120 et seq. It is not unlawful for the City of Douglasville to sponsor a parade through its streets. Ga. L. 1972, § 1.03 (s), pp. 2119, 2126. Thus, it was not unlawful for the City to route the parade in issue onto those streets that passed next to railroad property. Accordingly, we reject as a matter of law the position that the City's holding of its parade in the vicinity of railroad property which contained no danger created or maintained by the City constituted a nuisance.[5] To hold otherwise would be to label as a nuisance any properly-conducted activity held

---

[5] We note that this is not a situation where a dangerous condition existing on adjacent property injured someone on the City's property so as to create a jury question as to municipal liability. Compare *Parker v. Mayor &c. of Macon*, 39 Ga. 725 (1869). *Armburst v. Cox Broadcasting Corp.*, supra, 117 Ga. App. at 381, relied upon by the Court of Appeals, is thus distinguishable in that it involved privately-owned scaffolding adjacent to city sidewalks. Nor is this an instance where the municipality built a park on either side of railroad tracks, thereby necessitating passage over the tracks to move from one side of the park to the other. Compare *Grier v. City of Atlanta*, 200 Ga. App. 575 (408 SE2d 794) (1991).

by a public entity on any of its property that is adjacent to and does not improperly encroach upon railroad tracks.

Finally, even accepting, arguendo, the position that the City's act in holding the parade can qualify as a nuisance, "[a] public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." OCGA § 41-1-2.

> This language is not used in the sense that every person in the area must have been actually hurt or injured in order to show a public nuisance. It is sufficient if it injures those of the public who may actually come in contact with it. A public nuisance exists if the act complained of affects rights which are common to all within a particular area.

(Punctuation, citations and footnote omitted.) *Moreland v. Cheney*, 267 Ga. 469-470 (479 SE2d 745) (1997).

The undisputed evidence showed that during the 30 or more years prior to the injuries incurred by the Queen girls, no other parade spectator had ever been injured by a train on the railroad tracks. "Inasmuch as a public nuisance must injure all members of the public who come into contact with it, (the evidence) to the contrary effectively erased [Queen's] public nuisance cause of action." (Citations and punctuation omitted.) *Kitchen v. CSX Transp.*, 265 Ga. 206, 210 (3) (453 SE2d 712) (1995). See also *United Refrigerated Svcs. v. Emmer*, 218 Ga. App. 865 (2) (463 SE2d 535) (1995).

*Judgment reversed. All the Justices concur, except Sears, J., who concurs in the judgment only as to Division 4 and Hines, J., who dissents.*

HINES, Justice, dissenting.

I respectfully dissent, as I believe the issues the majority has decided must be presented to a jury.

1. An action for negligence is properly set forth in this case. Although the majority states Queen's complaint asserts exclusively acts of nonfeasance, Queen's complaint asserts that the City's decision to hold the parade in the vicinity of the railroad tracks, with its attendant dangers, was a positive act of misfeasance. In this case, the City has chosen to act, and has acted; its actions are not simply nonfeasance, taking the matter out of the ambit of OCGA § 36-33-2. *City of Columbus v. Myszka*, 246 Ga. 571, 571-572 (1) (272 SE2d 302) (1980).

In planning the parade, the City owed the parade spectators a duty "not to subject them to an unreasonable risk of harm." *Bradley Center v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693) (1982). Although

the majority recognizes this concept, it finds that the duty was not breached. However, evidence was presented that congestion of parade spectators adjacent to the railroad tracks was a problem during previous parades and that the City was aware of this. It is for a jury to determine whether again planning the parade route as in the past despite knowledge of the crowd congestion and its foreseeable consequences, was a breach of the City's duty.

The majority also finds that the Queen girls were not injured by any parade participant, were not on City property, and were not injured by any instrumentality over which the City exercised control. Although the majority concedes that injuries such as those that befell the Queen girls may be foreseeable when a municipality plans an event such as a parade, it holds that despite that forseeability, a municipality will not be liable for such an injury because, as a matter of law, the municipality's act will be deemed not to be the cause of the injury. However, whether any City action was the proximate cause of the Queen girls' injuries is properly decided by a trier of fact, not by an appellate court. *Atlanta Ob. & Gyn. Group, P.A. v. Coleman*, 260 Ga. 569, 570 (398 SE2d 16) (1990). A jury should decide whether the City was responsible for the "situation of peril" in which the Queen girls found themselves. See *Alexander v. Harnick*, 142 Ga. App. 816, 817 (3) (237 SE2d 221) (1977).

2. The majority also improperly finds that, as a matter of law, the City's actions could not constitute a nuisance. It cites OCGA § 41-1-1's definition that "[a] nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance," but ignores the statute's inclusion of a lawful act. The majority focuses on the statement in *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 425 (3c) (249 SE2d 224) (1978), that to be a nuisance an act must be done in an "illegal manner," but equates "illegal" with "not authorized by law," and the majority concludes that because the acts were in the City's legal power they were not "illegal." The statute specifically recognizes that a nuisance may be a lawful act, and it is irrelevant that the City is *empowered* to conduct a parade and *empowered* to site its streets adjacent to railroad tracks. The issue is not whether the municipality's act is within the government's authority, but whether it is "illegal" as that term is used in the context of nuisances. *Mayor &c. of Savannah* uses the term only in the context of a lawful act; the act is "illegal," though otherwise lawful, when done in violation of some right, here the right to attend the parade without being subjected to an unreasonable risk of harm. The law has long been that "[a]n action may be brought against a municipality for the creation or maintenance of a nuisance where the municipality is negligent in carrying out a lawful act which it was authorized to do." See

*Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 838 (165 SE2d 141) (1968). The salient inquiry is whether the City "committed an act which created the dangerous condition." *Mayor &c. of Savannah*, supra at 427 (4).

The effect of the majority's decision is that whenever a municipality is acting within its powers in conducting an event, that event cannot be a nuisance, regardless of how dangerous a condition the municipality may create. That is not the law of Georgia, and this Court should not declare it to be the law. Whether the City created a dangerous condition in this case is a question which should properly be presented to a jury.

Nor is summary judgment appropriate on the basis that the parade and its attendant congestion cannot be considered a nuisance because no one else had been injured by a train in the more than 30 years in which the parade had been held. It is not necessary that there be a prior injury for there to be a public nuisance; a public nuisance exists if the act complained of affects rights which are common to all those in a particular area. *Moreland v. Cheney*, 267 Ga. 469, 469-470 (479 SE2d 745) (1997). All those who attended the parade had the right not to be subjected to an unreasonable risk of harm, and the creation of such a risk to a body of spectators can be considered a public nuisance; it is sufficient if the circumstances surrounding an act pose a threat to those of the public who come into contact with it. Id.

Neither the lower court nor this Court should act as the jury in this case. Accordingly, the judgment of the Court of Appeals should be affirmed.

DECIDED MARCH 8, 1999 —
RECONSIDERATION DENIED APRIL 2, 1999.

*Hawkins & Parnell, Charles R. Beans*, for appellant.
*Johnny R. Pannell, Parker & Lundy, William L. Lundy, Jr.*, for appellees.
*Walter E. Sumner, Susan M. Pruett*, amici curiae.