**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely
filed.**
          **https://www.gaappeals.us/rules**

**March 11, 2025**

# In the Court of Appeals of Georgia

A24A1493. NORMAN v. BUCCINA et al.

DOYLE, Presiding Judge.

Joseph and Kimberly Buccina (collectively, "the Plaintiffs"), individually and on behalf of their daughter, Alexis Buccina ("Buccina") (deceased), filed this negligence and wrongful death action against Douglas Gregory Nuelle.[1] Following the denial of Nuelle's motion for summary judgment, Nuelle appeals, contending that the trial court erred by finding that genuine issues of material fact existed as to the Plaintiffs' claims. For the reasons that follow, we reverse.

---

[1] Nuelle died after the lawsuit was filed, and Rebecca Norman (his daughter), as the administrator of his estate, was substituted as the party defendant.

Viewed in the appropriate light,[2] the record shows that in September 2019, Buccina lived in an apartment in Atlanta. Down the hall in the same complex, Amanda Dunn lived in an apartment rented by her then boyfriend, Nuelle.[3] On the night of September 18, 2019, and into the morning of September 19, 2019, Buccina and some of her friends, including Destaney Citizen, used illegal drugs, including heroin and methamphetamine, in Dunn's apartment. That morning, Buccina, Citizen, and Dunn went to a grocery store, and after returning, Buccina and Dunn walked their dogs. Thereafter, Citizen went to Buccina's apartment, and Buccina went to Dunn's apartment, where she fell asleep on the couch.

When Nuelle arrived at Dunn's apartment around 2 p.m., Buccina was "passed out on the couch." Nuelle deposed that he thought she was sleeping, although he could not tell whether she was asleep or unconscious. Buccina was in a partially reclined sitting position, and her chest was rising and falling, indicating to Nuelle that she was breathing. Dunn told Nuelle that she and Buccina had been up all night

---

[2] See *Benson v. Ward*, 343 Ga. App. 551, 552 (807 SE2d 471) (2017) ("On appeal from the denial of summary judgment, we review the evidence de novo, construing all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant.").

[3] At the time of the events in question, Nuelle was a practicing orthopedic surgeon.

smoking marijuana and drinking alcohol. Nuelle deposed that he believed Buccina would wake up. Nuelle and Dunn left to run an errand and returned to the apartment between 30 and 45 minutes later. Upon their return, Buccina was still on the couch in the same condition as when they had left. By this time, Citizen had rejoined the group in Dunn's apartment.

Nuelle and Dunn had plans to leave town for several days, so Nuelle did not want to leave Buccina in the apartment. Nuelle attempted to wake Buccina by talking to her and shaking her shoulder. Buccina moaned and shrugged her shoulders but did not wake up. Nuelle deposed that, based on Dunn's statement that the group had been partying all night, he thought Buccina was under the influence of something preventing her from being roused. Nevertheless, Nuelle believed that Buccina would eventually wake up.

Nuelle checked Buccina's pupils and noted that they were small. He also checked Buccina's pulse, which he felt was normal. There was no indication that Buccina had vomited or was otherwise in distress. Nuelle deposed that while he thought Buccina had taken a drug, he did not know what or how much of it she may have taken.

Nuelle, Dunn, and Citizen then lifted Buccina, carried her to her apartment,

and placed her in her bed on her side so that she would not choke if she vomited. Nuelle deposed that Buccina was moaning as they carried her. Nuelle and Dunn remained in Buccina's apartment for about 15 minutes. Nuelle then told Citizen, who was going to stay and watch Buccina, that he and Dunn had to leave. Nuelle instructed Citizen, "if anything changes or you just get scared, call 911." Nuelle and Dunn then departed. Nuelle deposed that he did not believe that Buccina was in peril at this time. He maintained that he believed that she would wake up, although he admitted that he did not know what would happen.

Citizen stayed with Buccina for a couple of hours but eventually left. That afternoon and evening, Buccina's parents repeatedly attempted to contact her but received no response. Buccina's father went to her apartment around 11:30 p.m. to check on her. When he got there, the door to her apartment was unlocked, and he found Buccina lying in bed on her side with her eyes rolled back and vomit on her pillow. He attempted CPR and told Buccina's mother over the phone to call 911. Emergency personnel arrived shortly thereafter and transported Buccina to the hospital. Buccina never regained consciousness and died two days later due to complications from an overdose of heroin, methamphetamine, MDMA, and alprazolam.

Subsequently, the Plaintiffs[4] brought suit against Nuelle for negligence and wrongful death, alleging that Nuelle was negligent in moving Buccina to her apartment and not calling 911, causing a delay in medical care that led to her death. Discovery proceeded, and Nuelle moved for summary judgment. Specifically, Nuelle argued that he was entitled to summary judgment because he owed no duty of care to Buccina. The Plaintiffs asserted that Nuelle had voluntarily assumed a duty of care as to Buccina by moving her to her apartment and claimed that whether Nuelle's actions gave rise to a duty of care was a jury question.

Following a hearing, the trial court denied Nuelle's motion for summary judgment by way of a two-sentence written order prepared by counsel for the Plaintiffs, which stated the following: "The above styled case is before the Court on Defendant's Motion For Summary Judgment. After considering the entire record in the case and after oral argument at the November 8, 2023 hearing, the Court finds that genuine issues of material fact remain and denies Defendant's Motion For Summary Judgment."

Nuelle requested a certificate of immediate review, which the trial court granted. We granted Nuelle's application for interlocutory appeal, and this appeal

---

[4] Joseph Buccina became the sole plaintiff after Kimberly Buccina died in February 2023.

followed.

Nuelle contends that the trial court erred by denying his motion for summary judgment because the undisputed facts showed that he owed no duty of care to Buccina. We agree.

> In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, . . . [including] the existence of a duty on the part of the defendant[.] . . . In order to proceed on a tort claim based upon failure to render aid, the plaintiff, as a threshold matter, must demonstrate that the defendant had a legal duty to render aid; even the actor's realization that some action on his or her part is necessary for another's aid or protection does not, in and of itself, impose upon the actor the duty to undertake such action. The existence of a legal duty is a question of law for the court.[5]

Generally, "a person is under no duty to rescue another from a situation of peril which the former has not caused."[6] Here, the undisputed record reflects, and the parties agree, that Nuelle did nothing to cause Buccina's perilous situation and that

---

[5] (Citations and punctuation omitted.) *Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565, 566-577 (713 SE2d 835) (2011). Accord *Sheaffer v. Marriott Intl., Inc.*, 349 Ga. App. 338, 340 (1) (826 SE2d 185) (2019) ("[T]he threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff. This issue is a question of law. . . . In the absence of a legally cognizable duty, there can be no fault or negligence.") (citations and punctuation omitted).

[6] *Rasnick*, 289 Ga. at 567 (1), quoting *City of Douglasville v. Queen*, 270 Ga. 770, 773 (3) (514 SE2d 195) (1999).

Nuelle thus had no independent legal duty to render aid.[7] Nevertheless, the Plaintiffs argue that Nuelle's actions in attempting to rouse Buccina, assessing her vital signs, and moving her to her apartment triggered the application of the voluntary undertaking doctrine.

> Under this principle, one who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking is purely voluntary or even though it was completely gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu based thereon. When one undertakes an act that he has no duty to perform and another person reasonably relies upon that undertaking, the act must generally be performed with ordinary or reasonable care.[8]

The undisputed record here reflects that Buccina became unconscious before the relevant time frame during which Nuelle interacted with her. Thus, Buccina could not have reasonably relied upon Nuelle's actions so as to trigger the application of the voluntary undertaking doctrine; however, detrimental reliance is not the only

---

[7] Likewise, the parties agree that because no physician-patient relationship existed between Nuelle and Buccina, Nuelle's professional status created no additional duty of care.

[8] (Punctuation omitted.) *Dutt v. Mannar & Co.*, 354 Ga. App. 565, 567 (2) (841 SE2d 132) (2020).

application of this doctrine. "[A]n injured person seeking to impose liability upon another for the negligent performance of a voluntary undertaking must show *either* detrimental reliance *or an increased risk of harm*."[9]

In *Herrington v. Gaulden*,[10] our Supreme Court explained that this aspect of the voluntary undertaking doctrine

> applies only to the extent that the alleged negligence of the defendant exposes the injured person to a greater risk of harm than had existed previously. Accordingly, [this principle] applies when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed. Liability does not attach for failing to decrease the risk of harm. Put another way, the mere failure to abate a hazardous condition — without making it worse — does not trigger the application of [the voluntary undertaking doctrine].[11]

Based on this, the Plaintiffs contend that Nuelle's actions subjected Buccina to an increased risk of harm to the extent that he left her in a worse position than when he had found her. The undisputed record here belies this contention. There is no evidence that Nuelle's observations of Buccina's eyes, breathing, and pulse or his

---

[9] (Emphasis supplied.) *Grandma's Biscuits v. Baisden*, 192 Ga. App. 816, 818 (2) (386 SE2d 415) (1989).

[10] 294 Ga. 285, 286-288 (751 SE2d 813) (2013).

[11] (Citations and punctuation omitted.) Id. at 288.

attempts to rouse her by speaking to her and shaking her by the shoulder increased her risk of injury or death by overdose. Likewise, there is no evidence that Nuelle's removal of Buccina from Dunn's apartment and placement of her in her bed at her apartment put her at any greater risk of harm from an overdose than she was already in.[12] Neither is there any evidence that Nuelle in any way harmed Buccina in the course of inspecting and moving her. Thus, absent any evidence of detrimental reliance or an act that increased the risk of harm, the voluntary undertaking principle does not apply in this case.

We similarly reject the Plaintiffs' argument that Nuelle's failure to call 911 and his deposition testimony that, had he done so, there is "a possibility" that Buccina could have received medical attention earlier and been saved create any genuine issues of material fact sufficient to defeat summary judgment here. Such an argument "is cast in terms of the failure to act, i.e., an act of nonfeasance, and [Nuelle] was under no statutory or common law obligation to perform the act of calling 911[.] . . . [A]s a

---

[12] Indeed, the record reflects that by removing Buccina from Dunn's apartment, where she would have otherwise remained unattended and inaccessible for several days, Nuelle put Buccina in a better position than she was in when he had found her, given that (1) he left her in the care of her friend, Citizen, whom he instructed to monitor her and call 911 as needed; (2) he moved her to a location to which her friends and family had unobstructed access; and (3) he laid her on her side, as opposed to the sitting position in which he had found her, so that she would not choke if she vomited.

matter of law, [the Plaintiffs] cannot establish any breach of duty in regard to the alleged nonfeasance."[13]

> Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. A defendant may demonstrate that he is entitled to summary judgment by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims.[14]

Because Nuelle established that there is an absence of the essential negligence element of duty here, the trial court erred by denying Nuelle's motion for summary judgment as to the Plaintiffs' claims.

*Judgment reversed. Hodges and Watkins, JJ., concur.*

---

[13] (Punctuation omitted.) *Dutt*, 354 Ga. App. at 567 (2), quoting *City of Douglasville*, 270 Ga. at 772 (2).

[14] (Citations and punctuation omitted.) *Dutt*, 354 Ga. App. at 567 (2).